Good afternoon, Your Honors. My name is Duke Walquist, and I am here today on behalf of the appellants, the Upper Deck Companies. I would like to reserve approximately five minutes of my time for rebuttal, so I hope you'll indulge me in that if I get in the middle of something with one of you. This is an appeal of a preliminary injunction issued in a trademark case. It is our belief and our position that that preliminary injunction should be reversed, notwithstanding the deferential review for abuse of discretion, because it quite simply enjoins the defendants from committing perfectly lawful acts. And in support of that proposition, I want to cite two Ninth Circuit cases which have already been brought to your attention, but I believe they are controlling in this case. That's the Sebastian International v. Long's drug case and the NEC Electronics v. Cal Circuit Board case, both of which stand for the proposition that a trademark holder, and the law with respect to copyright is the same, has only a limited monopoly with respect to the use of their trademark. That once that is a good into the stream of commerce with their trademark on it, they have lost control over the sale of that mark, and it can be sold and resold as many times as anybody wants in the marketplace without anybody infringing that trademark holder's rights under the Land Amendment. That is exactly what the deferential order does in this case. It restricts Upper Deck from selling Yu-Gi-Oh cards that may bear Konami's trademark, notwithstanding the fact that those cards have been obtained lawfully and were legitimate and authorized cards on the open market. And that is not something that can be done under the Land Amendment. It is certainly not something that can be done in a preliminary injunction context, because in the context of a preliminary injunction, the goal is to maintain the status quo. Even if you were to reach and argue that under the Lanham Act, the Court has remedial discretion in the form of its injunctive powers, which I don't think the Court has the discretion to do, and I don't think the Court has the discretion to do that. But if you were to reach and argue that either of those two cases stand for in this context, you could not justify that sort of order in the context of a preliminary injunction, because it does not preserve the status quo. But help me. I thought that the basis of the trial court's refusal to recognize the first-sale doctrine as a defense in this case was based on some actions of Upper Deck which included doing something more than simply selling the cards legitimately purchased from Konami by being the beneficiary of a bank to the extent they were able to convince the bank to retainer them from taking a loan on purpose. And it continued to be a substitute for being successful. And it was that. That is why I quite frankly believe that it does. MALE SPEAKER continues. You were reluctant expressed that there will be a divisions.    Objection. agon. The fact that you're not disputing, and I hope you're not disputing, or maybe you are, the factual framing by the district court that there was a combination between vintage and upper deck that resulted in the counterfeiting by vintage cards of some of these Konami, I guess it was Yu-Gi-Oh cards. Yu-Gi-Oh. Yu-Gi-Oh. Let me answer that question in two ways. Number one, in terms of trial, there is no final adjudication on the merits on that issue. There is no final proof. There is no final finding. And in fact, it took three hearings to convince the district court that that was the case in the first instance. In the second place, for purpose of appeal, I'm not foolish enough to contest those findings of fact because I have to do so under a clearly erroneous standard. And when somebody does that, you know, I know they always lose here. Okay. But I don't want the court to misunderstand. What I say, when I say I have no challenges. Does the same thing go for the finding that you did more than just sell? You represented to the public at large that the relationships between upper deck and Konami remained the same even after Konami had terminated its relationships with you. In other words, you were holding yourself out as being the sole legitimate agent for the sale of these cards? We hotly dispute that anybody was misled in that regard. Yes, Your Honor. Again, those are findings that the trial court made in its preliminary injunction, and you would have to dispute those under clear error. I would. Here. And you do. I'm not challenging them on this record in this appeal, Your Honor. But I want you to keep in mind, this is a preliminary injunction. So we should see this as a case where, for purposes of our appeal, does this first sale doctrine apply where the person claiming his benefits has A, counterfeited and helped to counterfeit the product of Konami and B, represented itself as a continuing agent of Konami when that is not true? Does that affect the first sale doctrine? Or is the first sale doctrine so clear that you can do anything you want and not lose its benefit as long as there's a first sale? No, it doesn't affect the analysis, and yes, it does. That's a good answer. No, but yes. Yes, it does. The first sale doctrine does go so far. Once the plaintiff, in this case, has introduced those cards into the stream of commerce, anybody who buys them is free to resell them. There may be plaintiff may have complaints about that. They may have contractual complaints. They may have other complaints. But one thing they don't have is a trademark infringement claim. One thing they most certainly do not have, nor do they have a copyright infringement claim. And that is the legal hook on which the district court has rested this preliminary injunction. And that is the sole justification for the issuance of the injunction. And you simply can't have an infringement of a trademark once the first sale has taken place. What I would like to do, unless somebody has a question for me immediately, is I would like to reserve my remaining time for rebuttal. Good afternoon, your honors. May it please the court. Ben Fox, appearing for the Apple Lease, Konami Digital Entertainment and Konami Corporation. Ms. Hufstedler is with me and is on the Apple Lease brief. Now as Upper Deck recognizes the standard of review and the only real issue on appeal here is whether the district court has used its discretion in fashioning the scope of an interim remedy. The answer to that question is no. No legal error existed because the first sale doctrine does not apply. The Sebastian case relied upon by Upper Deck did not involve a post-termination infringement of intellectual property on a website or elsewhere. In the Sebastian case, all that was going on was a longs drug store was shelving and selling a shampoo. That's not this case. This is a case where Upper Deck counterfeited Konami's cards. That caused a termination of the distribution agreement. That is undisputed on appeal. Upper Deck does not challenge it because... Yes, but your permanent injunction not only prohibits the sale by Upper Deck of counterfeit cards, but of legitimate cards. Yes, your honor. And the reason is... Why? The reason is because the Lanham Act provides the court discretion to restrain conduct that in the context of the case is likely to cause confusion. And what has happened here is that Upper Deck was using Konami's trademark after the termination to peddle these cards. Moreover, there's no evidence in the record because Upper Deck put none into the record as to the source of the inventory that it is seeking to liquidate. The injunction prohibits not only distribution of cards that were purchased from Konami pursuant to the terms of this distribution agreement, but also prohibits distribution of additional counterfeit cards. There's a complete absence of any showing that Upper Deck had any authentic cards and therefore there's nothing to allow the district court, when it did its balancing, to determine what potential harm might result to Upper Deck. In addition, your honors, the... I guess I'm not following you. Why can't they sell the cards they legitimately bought from you on any terms that they wish under first sale doctrine? Because in the context of this case, there already was massive consumer confusion as to whether Upper Deck had the authority to act as the exclusive distributor. That was because Upper Deck was holding itself out as the rights holder, notwithstanding that it was terminated, and it did so by misuse of Konami's... Isn't the solution there for the preliminary injunction to say, a mandatory feature of the preliminary injunction to say, that Upper Deck can no longer hold itself out as the exclusive distributor of Konami, but that doesn't stop them from selling the cards to whoever they wish, does it? Your honor, that is a disclaimer, a disclaimer type of remedy that Upper Deck did not ask for. The Australian Gold case, which we cite in our paper as the Tenth Circuit case, says that in certain circumstances, a disclaimer would not be sufficient. This is that kind of circumstance. In addition, the cards that are, the authentic cards that are the subject of the injunction are cards that were packaged specially by Konami for sale to Upper Deck as the exclusive distributor, and those cards bore dual trademark labelings, meaning that they showed Konami's trademark, and right next to it, Upper Deck's trademark, to show that Konami is a manufacturer. Upper Deck, for these cards, was a distributor. Even absent the counterfeiting, the refusal to abide by the termination of the agreement, the selling of these specially made products by Upper Deck would tend to cause confusion. All right. Counsel Judge Gould with a question for you. To what extent, if any, can the injunction be sustained with reference to the breach of contract by Upper Deck as contrasted with, as the appellant's counsel argued, strictly copyright violation? He argues that that's the only thing the judge hanged his or her hat on. And, you know, is that true, or can we consider the circumstance of an exclusive distributor breaching a contract of distribution by making counterfeit cards in terms of what the scope of the remedy should be in part with reference to contract, or are we just looking at copyright? Thank you, Judge Gould. The court's primary basis for issuing the injunction was based on the Lanham Act, based on misuse of Konami's trademark on the website after the termination and other wrongful conduct that was likely to cause confusion. But there is an independent basis for affirming the injunction. That is, on this contract, the parties agreed that the product that is the subject of the injunction would have the dual trademark labeling, and the contract is silent as to what would happen to this specially made product after the termination. This is the Bill Blast case from the Third Circuit that we cite in our papers, which says that whereas here a contract is silent, it is reasonable to assume that the parties agreed that if the contract were to terminate early, if, for example, in this case, as a pursuant to that agreement, it has to be returned to the manufacturer or destroyed. Okay, thank you. I'd like to just also mention with respect to the Australian Gold case. We cite two cases which we believe are on point, the Australian Gold case and the Southern District of Florida, the Bulova Watch case. Upper Deck says in its reply brief that Australian Gold is distinguishable because Australian Gold restrained only sales on the Internet. That is untrue. It's incorrect. At page 1242 of the Australian Gold opinion, the court quotes the injunction, and the injunction restrained not only sale over the Internet, but also sale, well, the opinion says, or to the general public. So that puts that case directly on four with these facts. Unless the court has other questions, I will submit. I don't. Thank the court for its time. All right. Thank you. Well, let me dispel any confusion at all about whether or not contract bears any support for this preliminary injunction can be found in contract, because it wasn't argued to the trial court, and I believe if you check the first amended complaint, which was the then operative complaint when this matter issued, you'll find it doesn't even have a breach of contract claim in it. Contract itself does give Upper Deck a license to use Konami's trademarks in the promotion and sale of Yu-Gi-Oh! trading cards. It also provides that Upper Deck will get Konami's written consent to do so with respect to each promotion. If we can't come forward with evidence of that particular consent in this particular circumstance, that contract provides two choices in terms of the remedy to Konami. This isn't in the record before, because that wasn't even argued below. It gives Konami two choices. One, they can terminate the contract, which they've already done, or two, they get to collect a liquidated damage, which the letter of intent characterizes as a penalty of $100,000. That's what Konami contracted for in connection with this transaction. Having addressed that case, what I heard Mr. Fox say was there was massive consumer confusion in this case. You will not find any evidence of massive consumer confusion in this case. You'll find an email inquiry in this case to somebody saying, is Upper Deck still an authorized distributor? We're not. I want to go to the Sebastian case, which I believe to be the controlling authority. By the way, what was Upper Deck's, what does the record say Upper Deck responded to that inquiry? Did they say we're not, or did they say we are? Upper Deck said, let us meet with you immediately to try to address this situation, which was refused. You will find correspondence from my firm to Mr. Fox inviting Konami to meet with us to resolve this issue, and that request was refused as it has been refused every bit of the way all along the way in the context of this case. With respect to, I'm not sure that I have too much more to add other than the first sale doctrine is in the context of how this case was decided as a trademark case, not as a contract case, not as some other kind of case, a pretty clear body of law. And if the district court found or was concerned that there was something misleading, possibly violative of a trademark law, not some other law, not some other right, it was perfectly free to issue a preliminary injunction to preserve the status quo in connection with that sort of behavior. And that would have been easy to do. It would have been easy to say, whatever that vague something more that Mr. Fox refers to, or advertising on the Internet, if that's it, or suggesting that you are still Konami's distributor, it was perfectly free to enjoin that. Including counterfeiting. Including counterfeiting. Okay? But it was not free to enjoin the sale of previously sold legitimate, authentic Yu-Gi-Oh! trading cards, which my client had been obligated to purchase $50 million a year worth of. If the court found, if the court determined that Konami would be injured by your client's sale of those cards, in light of prior conduct of your client that the court determined factually for purposes of injunction, could the court, would the court have no power, no remedial power to make any inroad on the first sale back? Absolutely not in the context of a preliminary injunction. If you want to talk about remedial power to rectify a perceived wrong by the plaintiff after trial, that's one thing. But in the context of a preliminary injunction designed to preserve the status quo until this dispute can be resolved fully and fairly on the merits, no. It has authority to preserve the status quo. It doesn't have authority to enjoin a perfectly lawful act. Is a preliminary injunction under Rule 56 limited to preserving status quo? It's a general proposition. Yes, it is, Your Honor. That's the whole purpose of it, is to protect. But you don't think a court can issue a mandatory relief portion of a preliminary injunction under the injunction rules in a preliminary context if they have a substantial likelihood of, they think the plaintiff showed substantial likelihood of winning and they think the equities favor the mandatory relief? That's, is there precedent that says they can't do that? The due process clause, Your Honor. Well, wait a minute, Mr. Walquist. I think you're going a little bit too far. I said, is there precedent, was my question. Is there a Ninth Circuit or Supreme Court precedent that says that a preliminary injunction can't give a mandatory relief portion of the injunction? I don't think the issue is mandatory so much, Your Honor. I'm sure there are injunctions that are mandatory in their form in the context of preliminary injunctions if the mandatory form of the injunction is supposed to preserve the status quo, that is, to put things in place. Okay. Well, let's say, I'll amend my question. I mean, can they not give a portion of relief that doesn't preserve status quo, that gives some other remedy to protect the plaintiff, you know, if they've determined that the plaintiff is likely to win and if they've determined that weighing the balance of hardships, they think it's best to do that, most fair. Are you saying that's outside the... Already, Your Honor. We have certainly briefed the notion that a preliminary injunction's purpose is limited to preserving the status quo, but I think to do what you're suggesting would dispense with all notions of due process and essentially decide what ought to be a final remedy in this case before Upper Deck has had its full day in court. Well, but counsel, you're not arguing that if the status quo is that Upper Deck is counterfeiting with Vintage, Konami's cars, then we can't stop that counterfeiting activity until there's a final determination at trial. You're not saying that, are you? No, not at all. But I'm certainly saying you can't go further in the form of forming some additional provisional corrective relief, which is what I understand Judge Kuhl's saying. And that is what I'm asking you, and I find it questionable as a matter of theory to think that the court can't go further on relief in an appropriate case. But I'll look at all the precedents you're citing and any others I can find. All right. Thank you very much, counsel, and thank all counsel for their very thoughtful and informative presentation in a very unusual case. Thank you. That being the last case on the calendar, the court will stand adjourned until tomorrow morning at 930.
judges: Molloy, Gould, Bea